ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
AJAY KRISHNAMURTHY (CABN 305533)
ALETHEA M. SARGENT (CABN 288222)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    eric.cheng@usdoj.gov
    ajay.krishnamurthy@usdoj.gov
    alethea.sargent@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:23-CR-00264 JSW-6 |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| BRAULI RODRIGUEZ JALAPA, | |
| Defendant. | |

## I. INTRODUCTION

In 2021, Defendant Brauli Rodriguez Jalapa, an Oakland Housing Authority Police Department (OHAPD) police officer and former Pittsburg Police Department (PPD) officer, took part in a scheme and conspiracy along with five other officers of the Antioch (APD) and PPD to defraud their employers. After learning that PPD officer Patrick Berhan's partner was completing other police officers' college degrees for a fee, Defendant paid Berhan around $250 per class in April 2021 for her to complete three courses on his behalf toward a Bachelor of Science degree from University-1 in Criminal Justice. He did so intending to earn the degree to apply for increases in pay from OHAPD, as OHAPD offered its employees educational incentive pay and reimbursements (like APD and PPD).

Defendant's crimes were serious, particularly given his role as a police officer sworn to uphold the law and protect his fellow citizens from crime. Moreover, this scheme was not Defendant's only criminal activity after he became a police officer. In July 2021, Defendant was arrested for disorderly conduct and suspicion of being under the influence of a controlled substance and alcohol in an incident in which his vehicle had been driven into bushes and left unsecure, with police weaponry, ammunition, and tactical equipment exposed. And while on pretrial release following the federal charges in this case, Defendant was arrested again in 2024 for driving under the influence and making multiple threats to the arresting officers.

Based on the nature and circumstances of the serious offenses, Defendant's history and characteristics (including his role as a sworn police officer and other arrests), and the need to avoid unwarranted sentence disparities given the sentences already imposed by this Court arising out of this conspiracy, the government recommends that the Court impose a sentence of six months' custody—within the Guidelines, at the high end—followed by three years of supervised release, and 100 hours of community service. This proposed sentence is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a)(2).

## II. BACKGROUND

### A. Factual Background

Defendant was employed as a Police Officer by the OHAPD from approximately 2014 to 2017, and from 2018 to 2022. *See* Dkt. No. 240 (Plea Agreement) ¶ 2. From approximately 2017 to 2018,

Defendant was employed by the PPD. *Id.* Beginning no later than April 2021 through at least May 2021, Defendant agreed to participate in a scheme to defraud to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by omission and concealment of material facts. *Id.*

The Oakland Housing Authority offered its employees, including police officers, reimbursements toward higher education tuition and expenses, as well as educational incentive pay upon completion of a degree. *Id.* In April 2021, Defendant was enrolled at University-1, a distance learning institution that offered classes online toward a Bachelor of Science degree in Criminal Justice. *Id.*

Defendant learned that Individual-1 (who was associated with PPD Officer Patrick Berhan) could complete University-1 coursework for others in exchange for a fee. *Id.* Specifically, Individual-1 would sign into University-1's online platform as another individual and complete online University-1 courses for the benefit of the other individual toward that individual's undergraduate or graduate degree at University-1. *Id.* Defendant understood that Individual-1 provided these services for a fee, and that by using Individual-1's services, Defendant would be able to complete a degree without personally having to complete his own coursework. *Id.* Defendant learned that Individual-1 had already completed coursework for multiple other law enforcement officers towards their own Criminal Justice degrees at University-1, including PPD Officer Berhan and others. *Id.*

Accordingly, as a part of the scheme to defraud, Defendant tasked Individual-1 to complete University-1 coursework for him. *Id.* Specifically, Individual-1 completed approximately three courses for Defendant in April 2021. *Id.* At Defendant's direction, Individual-1 completed coursework, tasks, and exams on his behalf. *Id.* Defendant paid Individual-1, via Patrick Berhan in cash, about $250 for each class that Individual-1 completed for him. *Id.*

Defendant then fraudulently applied to the Oakland Housing Authority for reimbursement of about $4,250 in tuition for the University-1 courses that Individual-1 completed in his name. *Id.* At the time, Defendant also intended to earn a Bachelor's degree from University-1 based on, at least in part, courses that Individual-1 completed in his name. *Id.* Defendant also intended to apply for increases in his pay based on that Bachelor's degree; before Individual-1 could complete the degree, however, the

co-conspirators became concerned that their scheme would be discovered and Individual-1 stopped taking classes for others. Dkt. 339 at 101–102.

### B.  Procedural History

Defendant was charged in an Indictment on August 16, 2023 with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349 (Count One) and Wire Fraud in violation of 18 U.S.C. § 1343 (Count Seven). *Id.*, Dkt. No. 1.

On February 10, 2024, Defendant was arrested for driving under the influence in Clayton, California. PSR ¶¶ 11, 49. At a bail violation hearing, the magistrate judge imposed additional conditions on Defendant regarding substance abuse and treatment, as well as a stay-away order from two police officers involved with Defendant's arrest. *Id.*

Defendant pleaded guilty pursuant to a plea agreement on June 25, 2024. *See* Dkt. No. 240. Sentencing is set for October 22, 2024. Dkt. No. 239.

### C.  Criminal History

After Defendant became a police officer at OHAPD and PPD, he was arrested in two separate incidents by neighboring police agencies.

In July 2021, Defendant was arrested when the Brentwood Police Department responded to a "report of an extremely intoxicated individual" who had the odor of "alcohol emanating from his breath." PSR ¶ 48. Defendant appeared to be "under the influence of a controlled substance (stimulant)" as he was "very fidgety and could not stand still." PSR ¶ 48. Defendant's car "was not in a parking spot (pulled headfirst into the bushes)," with a window open and rear hatch open. *Id.* The unsecured rear hatch contained tactical equipment such as "gun lock boxes/safes … BDUs [uniforms], a ram/breaching tool, pelican cases, and boots" and the car contained "magazines with ammunition … police radios … operations plans, as well as a laptop computer." *Id.* Defendant's breath samples also read 0.165 and 0.185 blood alcohol content. *Id.*

In February 2024, after Defendant was charged in this federal case, Defendant was arrested again after the Clayton Police Department found him sleeping in the driver's seat of a car with the engine running, stopped in a roadway three to four feet from the curb. PSR ¶ 49. Defendant had "slurred and unintelligible speech" and had the odor of "alcohol emanating from his breath." *Id*. After officers

conducted field sobriety tests and arrested Defendant, he "became verbally aggressive and cursed at the officer relentlessly." *Id.* Officers also found tactical equipment inside of Defendant's car. *Id.* During transportation to a detention facility, Defendant "continued yelling obscenities and insults at the officer" and "made numerous statements threatening to cause physical harm." *Id.*

Despite the above arrests, Defendant does not have criminal convictions resulting in any Criminal History Points at this time, placing him in Criminal History Category I. *See* PSR ¶¶ 46–47.

### D. Guidelines Calculation

The government agrees with the Sentencing Guidelines calculation of the United States Probation Office, which is consistent with the parties' plea agreement. PSR ¶¶ 31–42; 79. The base offense level is 7, pursuant to U.S.S.G. § 2B1.1(a)(1); a two-level reduction pursuant to U.S.S.G. § 3E1.1(a) applies based on Defendant's Acceptance of Responsibility and a further two-level reduction applies pursuant to § 4C1.1(a) and (b) based on Defendant's "Zero-Point Offender" status. *Id.* An offense level of 3 with a Criminal History Category I yields an advisory sentencing range of 0 to 6 months of imprisonment. PSR ¶ 79.

### E. Sentencing of Codefendants

The status of this Court's sentencing of Defendant's codefendants and co-conspirators is follows (PSR ¶¶ 5–9):

- Samantha Peterson – pleaded guilty on January 9, 2024, sentenced to time served, 3 years of supervised release, 100 hours of community service;
- Patrick Berhan – pleaded guilty on March 26, 2024, sentenced to 30 months of custody, 2 years supervised release;
- Ernesto Mejia-Orozco – pleaded guilty on June 11, 2024, sentenced to 3 months of custody, 3 years of supervised release, 100 hours of community service;
- Amanda Theodosy/Nash – pleaded guilty on July 30, 2024, sentencing pending;
- Morteza Amiri – convicted at trial on August 8, 2024, sentencing pending.

## III. DISCUSSION

### A. Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the

U.S. SENTENCING MEMO                     5
4:23-CR-00264 JSW-6

purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B.     Recommendation**

The government respectfully recommends that the Court impose a sentence of six months of custody—within the Guidelines range, at the high end—followed by three years of supervised release and 100 hours of community service, based upon a consideration of the Guidelines and 18 U.S.C. § 3553(a) factors. This recommended Guidelines sentence would be appropriate given this Court's prior sentencings of Defendant's co-defendants and would be sufficient, but not greater than necessary, based on the nature and circumstances of the serious offenses and Defendant's history and characteristics.

First, Defendant's history and characteristics support the government's recommended sentence. Unlike many others that come before this Court, Defendant was a public servant sworn to uphold the rule of law. It is from this position Defendant participated in the fraud scheme charged in the Indictment, and his violation of public trust was severe. Moreover, this criminal conduct is far from Defendant's only brush with the law after becoming a police officer. As described above, Defendant has

been arrested in two separate incidents for being under the influence with aggravating factors, including once in July 2021 involving suspected controlled substances in which his vehicle had been driven into bushes leaving police weaponry, ammunition, and tactical equipment unsecured, and again in 2024 while on pretrial release following the federal charges in this case in which he further made threats to the arresting officers.

Second, the government's recommendation accounts for the nature and circumstances of the offenses—this Court is now familiar with the facts of this case and the seriousness of Defendant's participation in a scheme to defraud from his position as a police officer of OHAPD. Defendant intended to earn a Bachelor's degree based on courses Individual-1 completed in Defendant's name, and he intended to apply to his police department employer for increases to his pay; it is because his co-conspirators became concerned that the scheme would be discovered that Individual-1 stopped taking classes for Defendant, such that he did not successfully obtain pay raises and reimbursements like others in the scheme.

Third, the government's recommended sentence would serve as general deterrence to others in positions of public trust—particularly sworn police officers—from committing such crimes. As with Defendant's co-conspirators, this Court's sentence should be imposed accordingly to send a message to those who also may be tempted to commit such crimes.

This Court has sentenced three of Defendant's codefendants in this scheme to date, two of which shared the same Guidelines as Defendant (codefendants Peterson and Mejia-Orozco). Defendant's culpability is most similar to codefendant Mejia-Orozco—both having lesser criminality than the leader and organizer of the scheme Patrick Berhan (sentenced to 30 months of custody), including as accounted for by the calculation of their sentencing guidelines range, but both also deserving a more severe sentence than Peterson (sentenced to time served and 100 hours of community service) because of their status as sworn officers and having accepted responsibility without the immediacy of Peterson's change of plea. This Court sentenced Mejia-Orozco to three months of custody, balancing the seriousness of his crimes with his difficult upbringing and extraordinary showing of remorse. Dkt. No. 378. However, unlike Mejia-Orozco, Defendant has been arrested multiple times for other additional offenses after becoming a police officer, and Defendant fails to offer the same types of mitigating circumstances that

weighed in favor of Mejia-Orozco receiving a three-month sentence. For these reasons, a high-end Guidelines sentence of six months of imprisonment would be appropriate and avoid unwarranted sentencing disparities from Defendant's codefendants.

The government also recommends a three-year term of supervised release for Defendant with the conditions recommended in the PSR, including 100 hours of community service that this Court also required of codefendants Peterson and Mejia-Orozco. The expanded suspicionless search condition agreed to by the parties is appropriate to serve the interests of specific deterrence and rehabilitation given Defendant's use of electronic devices and wire communications in his crimes.

## IV.  CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of six months of imprisonment, followed by three years of supervised release with the agreed-upon expanded suspicionless search condition and other conditions recommended in the PSR (including 100 hours of community service).

DATED:  October 15, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
ERIC CHENG
AJAY KRISHNAMURTHY
ALETHEA M. SARGENT
Assistant United States Attorneys